IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KRISTEN LEIGH FULTON** | * | |
| | * | |
| v. | * | Civil Case No. JFM-15-2419 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 11, 12]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Fulton's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Fulton filed an application for Disability Insurance Benefits ("DIB") on September 15, 2011, and protectively filed an application for Supplemental Security Income ("SSI") on August 22, 2011. (Tr. 25, 222-32). In both applications, Ms. Fulton alleged a period of disability beginning August 14, 2011. (Tr. 222, 226). Her applications were denied initially on December 16, 2011, and on reconsideration on July 27, 2012. (Tr. 141-48, 154-57). An Administrative Law Judge ("ALJ") held a hearing on February 20, 2014, at which Ms. Fulton was represented by counsel. (Tr. 36-68). Following the hearing, the ALJ determined that Ms.

Fulton was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 25-34). The Appeals Council denied Ms. Fulton's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Fulton suffered from the severe impairments of cerebral palsy and organic mental disorder. (Tr. 27). Despite these impairments, the ALJ determined that Ms. Fulton retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to frequent handling, frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, frequent balancing and stooping, occasional kneeling, frequent crouching, and occasional crawling. She must avoid concentrated exposure to extreme cold and hazards such as moving machinery and unprotected heights. She can perform the following 90% of the time: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others.

(Tr. 29). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Fulton could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 32-33).

Ms. Fulton disagrees. She raises three primary arguments on appeal: (1) that the ALJ failed to properly weigh medical evidence and determine her RFC; (2) that the ALJ failed to properly evaluate her credibility; and (3) that the ALJ presented an inadequate hypothetical question to the VE, and consequently relied on flawed VE testimony, pursuant to the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Each argument lacks merit for the reasons discussed below.

Turning to Ms. Fulton's first argument, she contends that the ALJ erred by not assigning controlling weight to the opinions of her treating physician, Dr. Crosse. Pl. Mem. 8-11. Social

Security regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, if a treating source's medical opinion is not assigned controlling weight, the ALJ should consider the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship, including its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c) 416.927(c).

In the instant case, Dr. Crosse opined that Ms. Fulton "could not sit, stand or walk continuously in a work setting, she was markedly limited in use of her bilateral upper extremities, and she had other significant limitations due to muscle fatigue." (Tr. 32). Dr. Crosse also opined that Ms. Fulton would miss more than three days of work per month as a result of her impairments. *Id.* The ALJ gave Dr. Crosse's opinion "less weight," stating that it was "not supported by the overall objective medical evidence of record." (Tr. 32). The ALJ noted that Dr. Crosse had largely treated Ms. Fulton for minor issues, including coughing and bronchitis. *Id.* In addition, the ALJ stated that despite issues with balance and fine motor skills, Ms. Fulton "took college courses, worked part time, and lived alone with her son, managing her activities of daily living on her own." *Id.* Likewise, the ALJ cited Ms. Fulton's report to a psychological consultative examiner, Dr. Amado, that she was "very independent." *Id.*

Reviewing the remainder of the ALJ's discussion, the ALJ cited Ms. Fulton's testimony that she worked 15 to 20 hours per week at the time of her hearing, and that she lived alone with her son and was able to perform activities including light housework and laundry. (Tr. 30). She

also testified that she could walk as long as two miles at a time, contradicting her report to a consultative examiner just one month prior that she could only walk one block at a time. (Tr. 30-31). In addition, the ALJ reviewed a letter from an examining physician, Dr. Benjamin, who noted that Ms. Fulton had some difficulty with balance and clumsiness and had demonstrated a developmental delay since birth. (Tr. 30). Dr. Benjamin opined that Ms. Fulton "might need more time than normal to complete tasks at work, and she should avoid tasks requiring a great deal of balance and fine motor skills, as well as heights." *Id.* Likewise, the ALJ reviewed evidence from a psychological consultative examiner, Dr. Amado. Dr. Amado also stated that Ms. Fulton had developmental delays and needed to process things more slowly than others. Aside from developmental delays, Dr. Amado felt that Ms. Fulton's only difficulty was maneuvering through crowds because of physical, rather than psychological, limitations. *Id.* Finally, the ALJ noted the findings from consultative physical examinations performed by Dr. Gopalan and Dr. Udochi. Dr. Gopalan indicated that Ms. Fulton had some difficulty with ambulation but did not require the use of an assistive device. (Tr. 31). Ultimately, Dr. Gopalan opined that Ms. Fulton would have "some difficulty with extended walking, standing, lifting, carrying, and handling objects. She would have no difficulty with sitting, travelling, hearing or speaking." *Id.* Dr. Udochi did not opine any limitations and noted a largely normal examination. (Tr. 32).

Considering the entirety of the ALJ's RFC analysis, the weight assigned to Dr. Crosse's opinion was proper under Social Security regulations. The ALJ found that Dr. Crosse's opinion should not be given controlling weight because it was not supported by the evidence of record, including Ms. Fulton's ability to attend college classes and work part-time. (Tr. 32). The ALJ also considered relevant factors, as outlined in the Social Security regulations, in assigning

weight to Dr. Crosse's opinion. Specifically, the ALJ noted the length of her treatment relationship with Ms. Fulton, the nature of Ms. Fulton's complaints during her examinations, and the consistency of her opinion with the other record evidence. *Id.* This analysis comports with the Social Security regulations outlined above. Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Here, the ALJ adequately supported her findings regarding Dr. Crosse's opinion with substantial evidence.

Ms. Fulton next argues that the ALJ failed to properly evaluate her credibility. Specifically, she contends that the ALJ "failed to provide any explanation for how [the evidence] does not support Ms. Fulton's statements about her conditions." Pl. Mem. at 12. As discussed above, the ALJ cited the fact that Ms. Fulton was able to work part-time, attend college classes, and care for herself and her son. (Tr. 30-32). The ALJ noted that although Ms. Fulton initially stated in a consultative examination that she could walk no more than one block, she later testified that she was able to walk up to two miles. (Tr. 30-31). In addition, the ALJ cited Ms. Fulton's report to Dr. Amado that she was "very independent." (Tr. 31). Likewise, the ALJ provided a thorough review of the medical evidence, which generally reflected fewer limitations than those alleged by Ms. Fulton. Thus, contrary to Ms. Fulton's argument, the ALJ made specific findings of how her allegations contradicted the record evidence, and supported her findings with substantial evidence.

5

Turning to Ms. Fulton's final argument, she contends that the hypothetical question the ALJ posed to the VE did not adequately account for her finding at step three that Ms. Fulton has a moderate limitation in maintaining concentration, persistence, or pace, pursuant to the Fourth Circuit's holdings in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein[1] consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* §§

---

[1] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

404.1520a(c)(4), 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work,[2] despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.

---

[2] The hypothetical that the ALJ posed to the VE in *Mascio* did not actually limit the claimant to unskilled work, and thus did not match the ALJ's RFC assessment. However, the VE indicated that all of the jobs cited in response to the hypothetical involved "unskilled work" such that, in effect, the hypothetical matched the ALJ's RFC assessment.

2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Even so, the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC. *Id.*

In the instant case, the ALJ found Ms. Fulton to have moderate limitations in maintaining concentration, persistence, or pace at step three of the sequential evaluation. (Tr. 29). In making this finding, the ALJ stated that Ms. Fulton "was noted to need some extra time to comprehend and carry out tasks, but she was able to concentrate sufficiently to attend college classes and work part time." (Tr. 28). In her RFC assessment, the ALJ found that Ms. Fulton could "perform the following 90% of the time: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others." (Tr. 29). Thus, the ALJ's RFC assessment directly addresses Ms. Fulton's ability to maintain concentration, persistence, or pace, limiting that activity, and other related psychological activities, to 90 percent of Ms. Fulton's workday.[3] Accordingly, the ALJ adequately accounted for Ms. Fulton's moderate limitation in concentration, persistence, or pace, and remand is not warranted under *Mascio*.

---

[3] SSR 96-9p provides that a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks. Thus, Ms. Fulton's limitation to maintaining concentration and attention for 90 percent of the workday would include breaks in addition to those encompassed by a normal workday.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 12];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 11];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  April 14, 2015                                  /s/
                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge